**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JACQUE M., | No. CV 19-2269-PLA |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER** |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Jacque M.[1] ("plaintiff") filed this action on March 26, 2019, seeking review of the Commissioner's[2] denial of his application for Supplemental Security Income ("SSI") payments. The parties filed Consents to proceed before a Magistrate Judge on April 16, 2019, and April 17,

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and last initial, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

2019. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on December 11, 2019, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## **BACKGROUND**

Plaintiff was born in 1971. [Administrative Record ("AR") at 26, 332.] He has no past relevant work experience. [Id. at 26.]

On December 31, 2012, plaintiff filed an application for SSI payments, alleging that he has been unable to work since March 1, 2004. [Id. at 15; see also id. at 332-53.] After his application was denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 168-70.] A hearing was held on November 5, 2014, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [Id. at 42-68.] A vocational expert ("VE") also testified. [Id. at 65-68.] On November 21, 2014, the ALJ issued a decision concluding that plaintiff was not under a disability since December 31, 2012, the date the application was filed. [Id. at 131-41.] Plaintiff requested review of the ALJ's decision by the Appeals Council, which was granted on April 11, 2016. [Id. at 147-48.] The Appeals Council ordered the ALJ on remand to obtain additional evidence concerning plaintiff's 2014 complex elbow fracture and resulting surgery in March and June 2014. [Id. at 147.] On March 5, 2018, a remand hearing was held before the same ALJ, at which time plaintiff again appeared represented by an attorney and testified on his own behalf. [Id. at 69-97.] A medical expert ("ME") and a different VE also testified. [Id. at 74-80, 86-97.] On March 23, 2018, the ALJ issued a decision again concluding that plaintiff was not under a disability since December 31, 2012, the date the application was filed. [Id. at 15-27.] On February 7, 2019, the Appeals Council denied plaintiff's request for review. [Id. at 1-5.] At that time, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.984. This action followed.

/

/

# III.

# **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

# IV.

# **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

/

/

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since December 31, 2012, the application date. [AR at 18.] At step two, the ALJ concluded that plaintiff has the severe impairments of lumbar spine degenerative disc disease; history of asthma; right humerus fracture (status post-open reduction and internal fixation); depression; and anti-social personality disorder. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 21.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a range of light work as defined in 20 C.F.R. § 416.967(b),[4] as follows:

> [F]requent postural movements, occasional reaching/handling with his dominant right upper extremity, unrestricted fingering/feeling, performance of simple, repetitive tasks in non-public work setting, occasional interactions with co-workers and supervisors, and avoiding concentrate exposure to respiratory irritants (e.g. dust, fumes, chemicals, etc.).

[Id. at 22.] At step four, the ALJ concluded that plaintiff has no past relevant work. [Id. at 26.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including work as an "office helper" (Dictionary of Occupational Titles ("DOT") No. 239.567-010), as a "mail clerk" (DOT No. 209.687-026), and as a "sales attendant" (DOT No. 299.677-010). [AR at 26-27.] Accordingly, the ALJ determined that plaintiff was not disabled at any time since

---

[3] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[4] "Light" work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

December 31, 2012, the date the application was filed. [Id. at 27.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred when she evaluated the April 26, 2013, opinion of the psychiatric consultative examiner Nina Kapitanski, M.D. [JS at 5.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

**A.  LEGAL STANDARD**

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009); see also 20 C.F.R. §§ 404.1502, 404.1527.[5] The Ninth Circuit has recently reaffirmed that "[t]he medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)) (second alteration in original). Thus, "[a]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830; Garrison, 759 F.3d at 1012 (citing Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1221, 1227 (9th Cir. 2009)); Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222 (9th Cir. 2010). "The opinion of an examining physician is, in turn, entitled to greater

---

[5] The Court notes that for all claims filed on or after March 27, 2017, the Rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. See 20 C.F.R. § 404.1520c; see also 81 Fed. Reg. 62560, at 62573-74 (Sept. 9, 2016). However, the claim in the present case was filed before March 27, 2017, and the Court therefore analyzed plaintiff's claim pursuant to the treating source rule set out herein. See also 20 C.F.R. § 404.1527 (the evaluation of opinion evidence for claims filed prior to March 27, 2017).

weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830; Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

"[T]he ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons." Trevizo, 871 F.3d at 675 (citing Ryan, 528 F.3d at 1198). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citing Ryan, 528 F.3d at 1198). When a treating physician's opinion is not controlling, the ALJ should weigh it according to factors such as the nature, extent, and length of the physician-patient working relationship, the frequency of examinations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. Trevizo, 871 F.3d at 676; see 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ can meet the requisite specific and legitimate standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors', are correct." Id.

Although the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician," Lester, 81 F.3d at 831, state agency physicians are "highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); Soc. Sec. Ruling 96-6p; Bray, 554 F.3d at 1221, 1227 (the ALJ properly relied "in large part on the DDS physician's assessment" in determining the claimant's RFC and in rejecting the treating doctor's testimony regarding the claimant's functional limitations). Reports of non-examining medical experts "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

**B.   DR. KAPITANSKI'S OPINION**

On April 26, 2013, Dr. Kapitanski, a Board Certified Psychiatrist, issued a summary report

of her complete psychiatric evaluation of plaintiff. [AR at 465-69.] As part of her evaluation, Dr. Kapitanski obtained a mental treatment history from plaintiff, whom she considered to be an adequate historian. [Id. at 465.] She had no medical records available for her review. [Id.] Dr. Kapitanski noted that plaintiff was then in psychiatric treatment at the Parole Outpatient Clinic, where he saw a psychiatrist monthly. [Id.] At that time he was taking Remeron, Risperdal, and Benadryl, and reported that he had been on those medications for four years, and on psychotropic medications generally since 2004. [Id.] He also reported that he felt that the medications were helping him. [Id.] He stated that his mood was "a little depressed," and is low five days a week. [Id.] He indicated that he "is isolative with limited social interactions," and he does "not want to be bothered." [Id. at 465-66.] He reported decreased concentration, forgetfulness, and some paranoid ideations, but denied auditory or visual hallucinations, ideas of reference, mania, and hypomania. [Id. at 467.] Plaintiff also stated that he had been arrested "20 times and was in prison for four times," and was last released in 2010. [Id. at 466.] At the time of Dr. Kapitanski's evaluation, plaintiff was on parole. [Id.]

Dr. Kapitanski conducted a mental status examination and found the following: plaintiff was cooperative and maintained good eye contact; he was able to establish rapport with Dr. Kapitanski; there was no evidence of involuntary movements; his speech was fluent; his affect was flat; his mood was described as depressed; his thought processes were linear and goal-directed; he exhibited no evidence of hallucinations, delusions, or illusions and reported no obsessions or compulsions; he had mild paranoia; he was able to do serial sevens with errors, and serial threes; his abstract thinking was good; he responded appropriately to imaginary situations requiring social judgment and knowledge of the norms; and he had common sense understandings. [Id. at 467-68.]

Dr. Kapitanski diagnosed plaintiff with major depression with psychotic features, in partial remission, and a "Learning Disorder, NOS (per [plaintiff's] history)." [Id. at 468.] She noted that he reported resolution of psychotic symptoms but experienced ongoing depressive symptoms, and that his mental status evaluation reflected mild impairment with arithmetic, but "no[] other notable impairment on examination." [Id.] She also opined that his "prognosis is poor given his history

of multiple incarceration, inability to get along with others and ongoing mood symptoms."[6] [Id.] Dr. Kapitanski observed that plaintiff had no difficulty interacting with either her staff or herself, no difficulty maintaining his composure and even temperament, and "mild difficulties in maintaining social functioning because he is isolative." [Id.] She determined that he had "no difficulties in concentration, persistence and pace," an "adequate" level of personal independence, and is "intellectually and psychologically capable of performing activities of daily living (ADLs)." [Id.] Based on her objective findings during the interview, Dr. Kapitanski opined the following:

> [Plaintiff] would have no limitations performing simple and repetitive tasks and mild limitations performing detailed and complex tasks. [He] would have no difficulties to be able to perform work activities on a consistent basis without special or additional supervision. [He] would have moderate limitations completing a normal workday or work week due to his mental condition. [He] would have mild limitations accepting instructions from supervisors and interacting with coworkers and with the public. He would have moderate difficulties to be able to handle the usual stresses, changes and demands of gainful employment.

[Id.] She also found that plaintiff "is adhering and responding well to treatment," but that from a "psychiatric standpoint," his "prognosis is poor given chronicity of symptoms." [Id. at 468-69.]

In the ALJ's discussion leading up to her conclusion that plaintiff has the severe impairment of depression, the ALJ stated the following:

> [Plaintiff] received some intermittent mental health treatment during his incarceration. [He] reportedly took psychiatric medications including Remeron and Risperdal for depression and psychosis. However, as of an August 2009 report, [he] reported doing well and getting good relief from the medications, denying any psychiatric symptoms at the time. [He] continued to deny any particular symptoms as of February 2010, in advance of his anticipated parole, and reported being compliant with his medication. [He] also performed normally upon mental status testing and denied any psychotic symptoms.
>
> Upon his release, [he] continued to receive treatment at the parole outpatient clinic. As of February 2011, [he] denied any alcohol use and, apart from an irritable and angry affect, [he] generally performed normally upon mental status testing, showing no signs of psychosis or cognitive deficits. As such, he was diagnosed at the time with mood and anti-social personality disorders. As of June 2012, [he] reported

---

[6] Plaintiff told Dr. Kapitanski that he had been arrested 20 times and incarcerated four times [AR at 20]; he testified at the hearing that since 2004 he had been in and out of jail approximately four times on DUI convictions, and that each time he was incarcerated it was for about 32 months. [AR at 81-82.] He also testified that throughout his lifetime he had been incarcerated for a total of "[m]aybe 12 years," and that he had been released most recently in 2010. [Id. at 82.] Plaintiff reported being sober since his incarceration in 2007. [Id. at 83.]

being asymptomatic.

. . . . [summarizing Dr. Kapitanski's findings]

Later [after Dr. Kapitanski's evaluation], on the basis of a review of the evidence available as of September 2013, the State Agency non-examining medical evaluator, Dr. Chahal, assessed [plaintiff] as having moderate deficits in his ability to perform detailed tasks, maintain prolonged attention and concentration, maintain a consistent work pace, and interact appropriately with the general public.

Thereafter, in February 2014, [plaintiff] presented to the Los Angeles County Department of Mental Health with complaints of depression, auditory hallucinations, and mood instability, and seeking medication refills. [He] again generally performed well upon mental status testing and showed no overt signs of psychosis. As such, [he] was diagnosed with psychotic disorder, not otherwise specified, and prescribed new medications including Risperdone and Mirtazapine. As of a May 2014 follow-up visit, [he] reported getting good results with his medications and showed no abnormalities upon mental status testing.

Thereafter, [he] continued to treat intermittently at the county mental health department. As of July 2014, [he] had no complaints, continued to report medication compliance and denied any problems with depression or psychosis. He again reported feeling stable with no psychiatric complaints as of March 2015. [He] continued to deny any psychiatric complaints or issues remaining compliant with his medications during the remainder of 2015 and through 2016 and 2017.

[Id. at 19-21.]

In support of her RFC determination, the ALJ generally summarized the mental health evidence as follows:

[Plaintiff] received some intermittent mental health treatment during his incarceration, largely consisting of medications. When compliant with his prescribed medications, [he] generally reported feeling well with no depressive or psychotic complaints. In addition, post-incarceration parole outpatient records show no deterioration of [his] mental state and he generally reported being asymptomatic. [He] also generally performed well during Dr. Kapitanski's examination, showing some depressive signs, but no indication of psychosis or significant cognitive deficits. [He] also performed well during subsequent visits to the county mental health department, where he received medication refills. Moreover, as noted above, in the last 2-3 years, [plaintiff] has largely presented to the county mental health department with no psychiatric complaints. There is no indication [he] has required any inpatient psychiatric hospitalizations or ongoing, intensive outpatient therapy. Although the county mental health department assigned [plaintiff] a low Global Assessment Functioning (GAF) score of 45, the undersigned finds this score is inconsistent with [his] performance upon mental status testing, and the other evidence of record. Moreover, no treating or examining medical source has assessed [him] as wholly incapable of sustaining work activity secondary to mental health issues. As such, the available medical evidence fails to support the degree of mental . . . limitation [plaintiff] alleges.

[Id. at 24-25.] After her "thorough evaluation of the evidence," the ALJ determined that plaintiff's mental impairments have caused only mild deficits in understanding, remembering, or applying

10

information; "moderate deficits interacting with others (giving [plaintiff] the benefit of the doubt that he has anger management and personality issues)"; "moderate deficits in the area of concentrating, persisting, or maintaining pace (giving [him] the benefit of the doubt that his mental impairments, level of schooling [11th grade education], and lack of work history affects his ability to sustain attention to complex or detailed work tasks)"; and mild deficits adapting or managing himself. [Id. at 25.] As such, the ALJ determined that the RFC determination was "consistent with the available medical evidence, the degree of treatment, the gaps in treatment, [plaintiff's] good recovery following his arm surgery, the assessments and findings of the examining, testifying and consultative medical sources, [plaintiff's] repeated denials of mental health problems to the county mental health department, and his descriptions of his daily activities." [Id. at 26.]

**C.    THE PARTIES' CONTENTIONS**

Plaintiff argues that the ALJ erred because she did not assess any weight to Dr. Kapitanski's opinion. [JS at 7.] He notes that the ALJ summarized Dr. Kapitanski's opinion at step two of the sequential analysis, in connection with her determination that plaintiff's depression was a severe impairment, and submits that the ALJ otherwise only addressed the fact that Dr. Kapitanski's mental examination showed some depressive signs but no indication of psychosis or cognitive defect "when addressing that the medical evidence fails to support the degree of mental limitations alleged by plaintiff." [Id. (citing AR at 134-35, 138).] He argues that the ALJ failed to articulate "specific and legitimate reasons, let alone a single reason," for rejecting Dr. Kapitanski's opinions that plaintiff had "moderate limitations in completing a normal workday or work week due to mental conditions; and handling the usual stresses, changes, and demands of gainful employment." [Id. at 7-8 (citing AR at 135, 138-39, 469).] According to plaintiff, the ALJ instead focused on whether Dr. Kapitanski's mental status evaluation supported plaintiff's subjective symptom allegations. [Id.] He argues that the ALJ did not explain how Dr. Kapitanski's assessed moderate limitations in plaintiff's ability to handle the usual stresses, changes and demands of gainful employment, or completing a normal workday or work week "translates/incorporates to the mental limitations assessed in [plaintiff's] residual functional

1 capacity of performing simple repetitive tasks, performing tasks requiring more than occasional
2 contact with the public, [and] performing tasks requiring more than occasional contact with co-
3 workers and/or supervisors." [Id. at 8 (citing AR at 136-37).] Finally, plaintiff argues that the only
4 other mental health opinions in the record are those of the non-examining state agency opinions
5 at the initial and reconsideration level, which, as reports of non-examining physicians, do not
6 constitute substantial evidence and, therefore, "do not provide refuge for the ALJ's analysis." [Id.
7 (citing AR at 98-112, 114-126).]

Defendant notes that plaintiff's arguments address the ALJ's *2014* decision rather than the subject *2018* decision, which he terms a "gross deficiency." [Id. at 10.] Defendant states that if the Court nevertheless overlooks this "flagrant deficiency" and considers plaintiff's arguments in light of the current decision, plaintiff's arguments fail. [Id.] Defendant argues that the ALJ's RFC limitation to simple, repetitive tasks in a non-public work setting, with only occasional interactions with co-workers and supervisors, accommodated Dr. Kapitanski's assessed moderate limitations in completing a normal workday or work week and handling the usual stresses, changes, and demands of gainful employment. [Id. (citing AR at 22).] Defendant asserts that plaintiff "did well" during Dr. Kapitanski's mental status examination and that nothing in Dr. Kapitanski's findings indicates that plaintiff "would be *unable* to perform simple, repetitive tasks in a non-public work setting and with only occasional interactions with co-workers and supervisors during a normal workday or work week and handle the usual stresses, changes, and demands of simple, repetitive work." [Id. at 12 (emphasis in original) (citations omitted).] Defendant also notes that the ALJ's review of the medical record through 2017 reflected only intermittent mental health treatment, largely consisting of medications; plaintiff reported doing well on his medications; and plaintiff performed well on mental status examinations. [Id. at 13 (citing AR at 19-21 [which refers to id. at 815-820, 822, 824-31, 834-36, 838, 840, 842, 846, 848, 850-51], 120-21).]

**D.  ANALYSIS**

First, in support of his arguments, plaintiff does indeed cite to the ALJ's November 21, 2014, decision [AR at 131-41], which was vacated by the Appeals Council [see id. at 147] and not

to the ALJ's current decision.[7] The Court will not address arguments that are not relevant to the ALJ's March 23, 2018, decision, the only decision at issue herein. However, in order to fairly assess plaintiff's appeal of the ALJ's March 23, 2018, decision, the Court will consider plaintiff's arguments to the extent they are also applicable to the 2018 decision.

Next, plaintiff's arguments fail on the merits. Plaintiff argues that the ALJ failed to "translate" Dr. Kapitanski's assessed moderate limitations in plaintiff's ability to handle the usual stresses, changes and demands of gainful employment, or completing a normal workday or work week, into the ALJ's RFC determination that plaintiff could perform simple repetitive tasks, "perform[] tasks requiring more than occasional contact with the public, [and] perform[] tasks requiring more than occasional contact with co-workers and/or supervisors." [JS at 8.] The ALJ, however (neither in the 2014 decision *nor* in the 2018 decision), did *not* find that plaintiff could perform tasks requiring "more than occasional contact with the public" -- she limited plaintiff (in both decisions) to a "non-public work setting." [Id. at 22, 136 (plaintiff is able to perform medium work "not involving . . . performing tasks requiring any contact with the public").] She also did not find that plaintiff could have more than occasional contact with co-workers and supervisors -- she limited plaintiff to occasional contact with co-workers and supervisors. [Id. at 22, 136-37 (plaintiff is able to perform medium work "not involving . . . performing any tasks requiring more than occasional contacts with co-workers and supervisors").]

The Court acknowledges that the ALJ did not specifically state the weight given to Dr. Kapitanski's 2013 opinions regarding plaintiff's moderate limitations in completing a normal workday or work week due to mental conditions, and handling the usual stresses, changes, and demands of gainful employment. However, after reviewing the record, the Court finds that the ALJ reasonably determined that the objective medical evidence does not reflect a more restricted RFC than determined by the ALJ and that sufficient evidence supported that determination.

In addition to finding that plaintiff had "moderate limitations in completing a normal workday

---

[7] In his portion of the JS, defendant pointed out that plaintiff addressed the 2014 decision. Yet, despite defendant pointing this out, plaintiff failed to submit a reply addressing this issue.

13

or work week due to mental conditions; and handling the usual stresses, changes, and demands of gainful employment," Dr. Kapitanski noted that plaintiff had "no difficulties focusing and maintaining attention," in concentration, persistence and pace, and in "maintaining composure and even temperament." [Id. at 468.] She further noted that he had no limitations "performing simple and repetitive tasks" and "would have no difficulties to be able to perform work activities on a consistent basis without special or additional supervision." [Id.] There is no evidence in the record to suggest that Dr. Kapitanski or any other treating, consulting, or reviewing source considered plaintiff to be wholly unable to complete a workday or work week, particularly if he was limited to performing simple and repetitive tasks, no contact with the public, and limited contact with supervisors and co-workers -- limitations included in the ALJ's RFC determination. [Id. at 22.] See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (noting that the ALJ's limitation to simple work sufficiently accommodated the examining and reviewing physicians' findings that the claimant had "several moderate limitations in other mental areas"). Indeed, taken as a whole, Dr. Kapitanski's opinions do not preclude plaintiff from performing unskilled simple and repetitive work on a sustained basis, but suggest that he would have more difficulty if the work was complex or if interaction with others was more than occasional. As in Stubbs-Danielson, the ALJ here "translated [plaintiff's] condition, including the . . . mental limitations, into the only concrete restrictions available to [her] -- Dr. [Kapitanski's] recommended restriction to 'simple [repetitive] tasks'" and to no more than occasional interaction with supervisors, co-workers, and the public. Stubbs-Danielson, 539 F.3d at 1174. The ALJ's RFC determination is also consistent with the September 13, 2013, findings of the State agency reviewing psychiatrist Raman Gill Chahal, M.D., that plaintiff "may have difficulties in interaction with the general public," can handle limited public contact, and "can maintain superficial work related interaction with co-workers and supervisors," as well as with Dr. Chahal's conclusion that plaintiff "is capable of maintaining [concentration, persistence, and pace] on simple tasks to complete a workday/wk on a sustained basis." [AR at 123.]

Moreover, Dr. Kapitanski did not have an opportunity to review plaintiff's medical history prior to her examination in April 2013, relying instead on plaintiff's recounting of his history and her

one-time mental status evaluation. Indeed, the Court's review of the record through 2017 -- as also thoroughly reviewed and summarized by the ALJ -- reflects little more than intermittent mental health treatment (primarily for medication refills); positive signs, symptoms, and reports; no issues with medications, which were "working well"; and no evidence that the ALJ's RFC determination was inconsistent with Dr. Kapitanski's 2013 findings of moderate limitations in certain work-related areas or with the overall mental health opinions or evidence of record. Plaintiff points to no affirmative evidence, and the Court has not found any such evidence in the record, demonstrating that plaintiff is unable to perform the requirements of the occupations determined by the ALJ to be consistent with plaintiff's RFC.

The ALJ's RFC determination was based on substantial evidence of record and remand is not warranted.

## VI.
## CONCLUSION

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 18, 2019

　　　　　　　　　　　　　　　　　　　　PAUL L. ABRAMS
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE